IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| INTEGRATED BUSINESS PLANNING ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> OPERATIONAL RESULTS, INC., <br><br> Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO RECONSIDER AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT <br><br> Case No. 2:22-cv-00733-JNP-CMR <br><br> Chief District Judge Jill N. Parrish <br><br> Magistrate Judge Cecilia M. Romero |

Before the court are two motions brought by Integrated Business Planning Associates, Inc. ("IBP2"): (1) a motion to reconsider this court's previous order granting in part Operational Results, Inc. ("ORI")'s motion for partial summary judgment;[1] and (2) IBP2's own motion for partial summary judgment. ECF No. 126 ("Pl.'s Mot. to Reconsider"); ECF No. 131 ("Pl.'s Summ. J. Mot.").[2] For the reasons discussed below, the first motion is GRANTED and the second motion is DENIED. In light of these rulings, the court DENIES ORI's motion to strike and modify the briefing schedule as moot. ECF No. 133 ("Def.'s Mot. to Strike").

---

[1] Even though this motion is stylized as a motion to clarify and amend the court's previous order, the court treats it as a motion for reconsideration given its substance. The Federal Rules of Civil Procedure do not explicitly provide for a motion to reconsider an interlocutory order, but this court has broad discretion to engage in such reconsideration. *See Anderson v. Deere & Co.*, 852 F.2d 1244, 1246 (10th Cir. 1988) *("It is within the District Judge's discretion to revise [her] interlocutory orders prior to entry of final judgment.")*; Fed. R. Civ. P. 54(b).

[2] ECF No. 129 (redacted). After the first cite to any sealed docket entry, the court will provide the corresponding redacted entry.

## BACKGROUND

This case arises from a series of contracts between IBP2 and ORI. ECF No. 124 ("March 2025 Order")[3] at 1–2. ORI is a software company that developed a software platform to assist companies in supply chain planning and business processes. *Id.* at 1. IBP2 is a consulting firm that agreed to provide customers to ORI in exchange for referral fees. *Id.* at 1–2

The action began when IBP2 filed its first complaint, alleging that ORI had failed to pay referral fees owed in light of contracts signed in 2018 and 2019. ECF No. 1 ("Pl.'s Compl."); ECF No. 1-1 ("2018 Contract"); ECF No. 1-2 ("2019 Contract"). Based on these allegations, it brought claims for breach of contract and violation of the Utah Sales Representative Commission Payment Act ("Sales Act"), Utah Code Ann. §§ 34-44-101 to -302. ORI raised various defenses and brought counterclaims, asserting that it had fully performed its obligations and that IBP2 had impermissibly retained referral fees. ECF No. 8 ("Def.'s Answer"); ECF No. 25 ("Def.'s Am. Counterclaim").

The court granted in part ORI's first motion for partial summary judgment, making several findings about how the 2018 contract applied to various customers. ECF No. 77 ("June 2024 Order"). IBP2 then filed an amended complaint, claiming that it was entitled to referral fees under an earlier 2016 contract. ECF No. 104 ("Pl.'s Am. Compl.");[4] ECF No. 131-1 ("Pl.'s Summ. J. Mot. App."),[5] Ex. 1 ("2016 Contract"). ORI denied these claims and further amended its counterclaims to invoke the 2016 contract. ECF No. 111 ("Def.'s Answer to Am. Compl.").[6]

---

[3] ECF No. 125 (redacted).

[4] ECF No. 102 (redacted).

[5] ECF No. 129-1 (redacted).

[6] ECF No. 110 (redacted).

ORI brought a second motion for partial summary judgment, asking the court to make various rulings about which referral fees were mistakenly paid. ECF No. 80 ("Def.'s Second Summ. J. Mot.").[7] With respect to four customers—(i) ███████, LLC, (ii) ███████, (iii) ███████, and (x) ███████[8]—ORI argued that the referrals had expired under the 2018 contract and, as a result, IBP2 had no right to referral fees for these customers. March 2025 Order at 5–6. The court agreed and granted summary judgment with respect to these customers. *Id.* at 8, 12–13, 15. IBP2 now brings a motion asking the court to reconsider this aspect of the March 2025 Order. Pl.'s Mot. to Reconsider. It argues that the court ignored a genuine dispute of material fact about when the expiration provision was triggered. *Id.* at 6–9; ECF No. 134 ("Pl.'s Reply. Mot. to Reconsider."). ORI opposes the motion, arguing that it is procedurally improper and substantively incorrect. ECF No. 128 ("Def.'s Resp. to Pl.'s Mot. to Reconsider.").

IBP2 also brings its own motion for partial summary judgment, asking the court to enter judgment on counts one and four of its operative complaint. Pl.'s Summ. J. Mot.; Pl.'s Am. Compl. at 10–11, 15. This request focus on three customers: (iv) ███████, (v) ███████, and (vi) ███████. Pl.'s Summ. J. Mot. at 1. IBP2 asks the court to hold that it was entitled to referral fees for these customers under the 2016 contract. *Id.* at 1–2. It also asks the court to hold that ORI's failure to fully pay referral fees for customers (iv) and (vi) constituted breach of contract and violated the Sales Act. *Id.* at 2. *See*

---

[7] ECF No. 78 (redacted).

[8] The court follows the numbering convention used in the March 2025 Order. With respect to customers (i)–(iii), this matches the numbering used in the June 2024 Order. But there are discrepancies between the two orders with respect to customers (iv)–(vii).

3

*also* ECF No. 149 ("Pl.'s Reply Summ. J. Mot."). ORI again opposes the motion on both procedural and substantive grounds. ECF No. 142 ("Def.'s Resp. to Pl.'s Summ. J. Mot.").

## LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is material only if it might affect the outcome of the suit under the governing law. And a dispute over a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186 (10th Cir. 2016). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). When applying the summary-judgment standard, the court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008). The court must grant summary judgment on a claim if the party bearing the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## DISCUSSION

### I.  IBP2's Motion to Reconsider

Before turning to the substance of IBP2's motion to reconsider, the court first addresses ORI's procedural arguments. ORI argues at length that IBP2's motion is procedurally improper

because IBP2 has not set forth any facts that justify reconsideration. Def.'s Resp. to Pl.'s Mot. to Reconsider at 3–5. But the cases ORI cites involve the standard for reconsidering a final order under *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); Def.'s Resp. to Pl.'s Mot. to Reconsider at 4–5 (citing cases that apply *Servants of Paraclete*, 204 F.3d at 1012). The Tenth Circuit has explicitly held that *Servants of Paraclet* does not limit a district court's discretion to freely "reconsider [its] earlier *interlocutory* orders." *Been v. O.K. Indus.,* 495 F.3d 1217, 1225 (10th Cir. 2007) (emphasis added); *Luo v. Wang*, 71 F.4th 1289, 1298–98 (10th Cir. 2023); Fed. R. Civ. P. 54(b) ("[An interlocutory order] may be revised at any time before the entry of a judgment."). Even if *Servants of Paraclete* were to apply in this context, reconsideration would likely be warranted to correct a "misapprehend[sion of] the facts [and] a party's position." 204 F.3d at 1012.

The substance of the motion to reconsider turns on the following "Expiration of Referrals" provision of the 2018 contract:

> Referrals shall expire and become automatically null and void without the requirement of written notice thereof, and no longer subject to the payment of any Referral Fee, in the event that the New Sales Lead has not become a customer of the Referred Party (as evidenced by a signed purchase agreement) *within one (1) year from the date of the written approval of the New Sales Lead*. Referrals which have so expired shall no longer be subject to the opportunity for any Referral Fee.

2018 Contract § 5 (emphasis added). Under this provision, the expiration provision is triggered when ORI approves a "New Sales Lead" sent by IBP2. *Id.* If it takes over a year for the referred entity to become ORI's customer after this approval, then IBP2 loses any rights to referral fees. *Id.*

The court, in the March 2025 Order, ruled that IBP2's rights to referral fees had expired under this provision with respect to customers (i)–(iii) and (x). March 2025 Order at 6–8, 12–13.

For customers (i)–(iii), the court assumed that the following facts were undisputed: (1) IBP2 identified these customers as New Sales Leads in an email on September 24, 2018; (2) ORI accepted them as New Sale Leads via email the following day, triggering the expiration provision; and (3) over a year passed before any of the customers signed a purchase agreement with ORI. *Id.* at 6. Based on these assumptions, the court determined that there was no genuine dispute of material fact concerning whether customers (i)–(iii) had expired. *Id.* at 6–8. In its analysis, the court carefully considered and ultimately rejected IBP2's argument that the 2019 contract overrode the 2018 contract's expiration provision. *Id.* at 6–8. But the court assumed that there was no dispute that customers (i)–(iii) had expired under the 2018 contract insofar as the 2018 contract was still in force. The court similarly assumed that there was no genuine dispute that customer (x) had expired, if it even counted as a referral, because more than a year had passed between ORI's first communication regarding the customer and the customer's purchase agreement. *Id.* at 12–13.

IBP2 argues that this ruling was erroneous because the court ignored a genuine dispute of material fact concerning whether its email communications—on September 24, 2018 for customers (i)–(iii) and on February 28, 2022 for customer (x)—presented the four customers as "New Sale Leads" under the terms of the 2018 contract, thereby enabling ORI to trigger the expiration provision. Pl.'s Mot. to Reconsider at 6–9. IBP2 asserts that it was merely informing ORI of prospective customers in "various stages of the sales cycle, including . . . potential leads that IBP2 had not yet contacted" and thus did not present the four customers as New Sale Leads. *Id.* at 7–8 (emphasis omitted). Consequently, ORI could not accept these customers as New Sale Leads and trigger the expiration provision. *Id.* Although IBP2 had primarily relied on other arguments, it did raise this factual dispute in its original briefing responding to ORI's summary

judgment motion. Pl.'s Mot. to Reconsider at 3–5; ECF No. 84 ("Pl.'s Opp'n to Def.'s Second Summ. J. Mot.")[9] at 5, 10–11.

If this dispute is in fact genuine, then it renders the March 2025 Order incorrect with respect to these customers. As discussed above, the court's opinion never considered this dispute over when the expiration provision was triggered. If a reasonable jury could agree with IBP2 that the emails on September 25 and March 4 did not trigger the expiration provision, they could also conclude that ORI did not meet its burden in proving that the customers had expired.[10] Apart from these emails, ORI presented no evidence establishing when else ORI could have accepted these customers as New Sales Leads thereby triggering the expiration provision. *See* Def.'s Second Summ. J. Mot. at 5–11. Therefore, if there is a genuine dispute about whether these emails triggered the expiration provision, there is similarly a genuine dispute about whether customers (i)–(iii) and (x) in fact expired. But if IBP2's claims that these emails failed to trigger the expiration provision are "blatantly contradicted by the record" to the point where "no reasonable jury could believe [them]," then this dispute is not genuine and the court's original conclusion stands. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court begins with customers (i)–(iii) and considers whether the record establishes that the September emails triggered the expiration provision. An IBP2 employee sent an email on September 24, 2018 to OR2 that included a spreadsheet, which the parties had earlier reviewed. ECF No. 80-1 ("Def.'s Second Summ. J. Mot. App."),[11] Ex. 4. The spreadsheet contained a tab,

---

[9] ECF No. 83 (redacted).

[10] In the motion, ORI sought summary judgment on its counterclaims. Thus, ORI bears the burden of proof with respect to the underlying claims.

[11] ECF No. 78-1 (redacted).

titled "Pipeline Summary," and listed prospective customers divided into six descending categories: (1) "Active Leads," (2) "Intro/Demo," (3) "Named Accounts," (4) "Contract Negotiations," (5) "Pilot," and (6) "Won." *Id.* Customers (i)–(iii) were all outside of the Active Leads category.[12] *Id.* IBP2's CEO replied to the email, and among other things, asked, "[p]er our agreement and the revised/simplified communication of 'New Sales Leads', can you respond to confirm ORI acceptance of these as [IBP2] leads?". *Id.* Ex. 5. ORI's CEO responded the next day, expressing confusion about what constituted a New Sales Lead and how that interacted with the categories in IBP2's spreadsheet:

> Regarding "New Sales Leads": Where does the "New Sales Lead" line start? Intro/Demo or Active Lead? I'm not completely clear on the definition between the two. Does Intro/Demo mean that a visit and demo has already occurred, or that the company has just agreed to it, or it's something in the works? A couple of years ago we (ORI) defined a "New Sales Lead" as the point where a Demo/Intro was either scheduled or had actually happened. Is that how you are seeing it? Or are you thinking that the line starts at "Active Lead"? And, if so, what's the definition of an "Active Lead"? I'm open. Just want to head off any concerns down the road with what was intended to be a New Sales Lead.

*Id.* Ex. 6. The email then included a list of 26 customers, including (i)–(iii), that ORI purported to "accept as New Sales Leads from IBP2." *Id.* IBP2's CEO responded, saying "[t]he intent was to start with Active Lead." ECF No. 84-1 ("Pl.'s Opp'n to Def.'s Second Summ. J. Mot. App."),[13] Ex. 15.

---

[12] Specifically, customer (i) was included in the Named Accounts category, customer (ii) was included in the Pilot category, and customer (iii) was included in the Intro/Demo category.

[13] ECF No. 83-1 (redacted).

After interpreting this evidence in the light most favorable to IBP2, the court concludes that there is a genuine dispute as to whether this September 2018 email exchange triggered the expiration provision. A reasonable fact finder may conclude, for example, that IBP2 understood that it was only submitting the Active Leads as New Sales Leads and that other customers, including customers (i)–(iii), were merely potential leads that could not yet be made subject to the one-year expiration period. The 2018 contract leaves the term "New Sales Lead" undefined, so the contract itself does not directly conflict with IBP2's interpretation. 2018 Contract; March 2025 Order at 11.[14] Therefore, the court concludes that there is a genuine dispute regarding whether ORI's September 25 email triggered the expiration provision. As a result, there is a genuine dispute of material fact concerning whether customers (i)–(iii) expired under the 2018 contract.[15]

With respect to customer (x), there is even more ambiguity regarding when and whether the expiration provision was triggered. On February 28, 2022, IBP2 sent ORI an email noting that it was "recently awarded an RFP from [customer (x)] for global S&OP development" and was "prepared to position ORI in the engagement (pilot agreement with a full license transition built

---

[14] The term was defined in the 2016 contract as "a potential customer" identified via the formal referral process. § 2. Because the 2018 contract abandoned this formal referral process, it is unclear how this definition would translate to the 2018 contract if it is applicable.

[15] For the same reasons, the June 2024 Order partially granting ORI's first summary judgment motion erroneously found that customers (i)–(iii) had expired under the 2018 contract. *See* June 2024 Order at 8–10 (rejecting IBP2's argument that the parties were required to submit New Sales Leads through an agreed-on referral procedure but assuming, without explanation, that the customers had in fact been submitted as New Sales Leads via the September 24, 2018 email). This ignored the genuine material dispute of fact, raised by IBP2 in its briefing and supported by the evidence, about whether the email had in fact presented the customers as New Sales Leads. *See* ECF No. 35 ("Pl.'s Opp'n to Def.'s First Summ. J. Mot.") at 12–13; ECF No. 33 (redacted). Accordingly, the court exercises its authority to revise its interlocutory orders under Federal Rule of Civil Procedure 54(b) and strikes any grant of summary judgment in the June 2024 Order based on a finding that customers (i)–(iii) had expired under the 2018 contract.

in)." Def.'s Second Summ. J. Mot. App., Ex. 19. IBP2 requested "confirmation that ORI [was] interested/able to support this." *Id.* ORI then emailed the following response on March 4, 2022:

> [Customer (x)]: Yes we would like to support you and your team with [customer (x)], and right now we are planning on it. However, I really have no idea what we are signing up for. Is this one location or several? What is the scope of the pilot? Timing? Fees? etc. Would it be possible for Stephen or someone on your team to set up a meeting with James and I to bring us up to speed?

*Id.*, Ex. 20. A reasonable jury could conclude (1) IBP2 never intended to submit customer (x) as a New Sales Lead via its email and (2) ORI never intended to accept customer (x) as a New Sales Lead via its response. Indeed, ORI even argued that customer (x) was "not properly identified as [a] New Sales Lead[ ] and w[as] not accepted as such in writing by ORI." Def.'s Second Summ. J. Mot. at 21. ORI thus has not established that the March 2022 email triggered the expiration provision and, consequently, there is a genuine dispute of material fact concerning whether customer (x) expired.

Therefore, IBP2's motion to reconsider is GRANTED because ORI failed to establish that there was no genuine dispute of material fact concerning whether customers (i)–(iii) and (x) expired under the 2018 contract.

## II.    IBP2's Motion for Partial Summary Judgment

Before reaching the merits of IBP2's motion for partial summary judgment, the court first must address ORI's argument that the motion violates the operative scheduling order and thus should be denied on procedural grounds. Def.'s Resp. to Pl.'s Summ. J. Mot. at 15–16. ORI points to this court's second amended scheduling order, which set August 12, 2024 as the deadline for filing dispositive motions. ECF No. 47 ("Second Am. Scheduling Order"). IBP2's motion was filed almost a year after that deadline and thus may appear egregiously untimely. But IBP2 is

seeking summary judgment on claims that were added after this dispositive motion deadline. *See* Pl.'s Reply Summ. J. Mot. at 8. IBP2 raises plausible arguments that the addition of these new claims either displaced the existing scheduling order or established good cause to depart from it. *Id.* at 7–9. Regardless, this court "enjoy[s] broad discretion to manage [its] docket[ ] and to consider motions that are not timely filed under [its] scheduling orders." *Gardner v. Deseret Mut. Benefit Adm'rs*, No. 2:14-CV-00602, 2016 WL 1595359, at *1 (D. Utah Apr. 20, 2016) (citation modified). Because IBP2's motion raises an argument that almost surely requires resolution before trial, the court chooses to address it now.

IBP2's substantive argument for its motion relies on a theory of judicial estoppel. It argues that ORI has represented, both before and during litigation, that it owed IBP2 referral fees with respect to customers (iv)–(vi) under the 2016 contract. Pl.'s Summ. J. Mot. at 6–7. And if ORI is estopped from taking a contrary position now, then IBP2 has a colorable argument that it is entitled to summary judgment on breach-of-contract and Sales Act claims regarding these customers. *See id.* at 6–10. The court has already rejected ORI's argument that the 2018 contract eliminated its obligations under the 2016 contract. March 2025 Order at 8–10. Thus, ORI's unpaid obligations under the 2016 contract would plausibly constitute breach of contract. Pl.'s Summ. J. Mot. at 6–8. And insofar as these unpaid contractual obligations qualify as unpaid commissions, ORI's conduct plausibly violated the Sales Act. *Id.* at 9–10. But the court rejects IBP2's theory of judicial estoppel and, with it, must reject IBP2's motion altogether.

Judicial estoppel is an equitable doctrine that exists to "prevent[ ] a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). Its "purpose is to protect the integrity of the judicial process by

prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749–50 (citation modified). The Supreme Court has articulated three factors to potentially be considered in applying the doctrine: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) courts can inquire into "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) courts can consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51 (citation modified). The Tenth Circuit has described judicial estoppel as a "powerful weapon to be used only when less forceful remedies are inadequate." *Asarco, LLC v. Noranda Mining, Inc.*, 844 F.3d 1201, 1207–08 (10th Cir. 2017) (citation modified). Accordingly, "[t]he burden falls on the moving party to show the need for its application." *Id.* at 1207.

    Here, IBP2 cannot even show that ORI's current position is clearly inconsistent with its earlier positions. IBP2 points to various representations by ORI that supposedly declare that IBP2 was owed referral fees for customers (iv)–(vi) under the 2016 contract. *See* Pl.'s Summ. J. Mot. at 7–8. These representations acknowledged that the customers were "subject to payment under the [2016 agreement]" and that IBP2 was entitled to referral fees "per the terms of the . . . 2016 agreement." *Id.* at 7 (quoting ECF No. 28 ("Def.'s First Summ. J. Mot.") at 8 and ECF No. 37 ("Def.'s Reply First Summ. J. Mot.) at 5). But, as ORI argues, these representations may mean only that any referral fees owed for these customers would be governed by the 2016 contract, rather than the 2018 or 2019 contracts. Def.'s Resp. to Pl.'s Summ. J. Mot. at 20–21. Under this interpretation, the statements are consistent with ORI's current position that the conditions

precedent for payment under the 2016 contract were not satisfied. *Id.* at 16–20. Regardless of whether this interpretation is in fact correct, it is certainly plausible enough to avoid clear inconsistency.

With respect to judicial acceptance and unfairness, IBP2 again fails to justify judicial estoppel. Even if IBP2 had unambiguously conceded liability under the 2016 contract, the court never accepted or relied on such an admission. IBP2 suggests that the court relied on this representation when holding that IBP2 was not owed referral fees under the 2018 contract. Pl.'s Summ. J. Mot. at 8. But the court's holding was based entirely on the text of the 2018 contract—and, more specifically, the fact that IBP2 had failed to identify any provision of the contract as a basis for these obligations. July 2024 Order at 10–11. At no point did the court, explicitly or implicitly, rely on the assumption that there would be liability under the 2016 contract. And because ORI never persuaded the court that there would be liability under the 2016 contract, there is no unfairness in permitting ORI to deny liability now. IBP2 thus has failed its heavy burden to invoke judicial estoppel.

Without judicial estoppel, there clearly are genuine disputes of material fact about whether IBP2 is owed referral fees under the 2016 contract. For example, ORI shows that there is a genuine material dispute of fact about whether IBP2 complied with the 2016 contract's referral process. *See* Def.'s Resp. to Pl.'s Summ. J. Mot. at 6–7, 16–18. In arguing otherwise, IBP2 cites Utah's doctrine of substantial performance, which allows a party to recover under a contract, notwithstanding "mere technical, inadvertent, or unimportant omissions or defects." *Cent. Utah Water Conservancy Dist. v. Upper E. Union Irr. Co.*, 321 P.3d 1113, 1120 n.2 (Utah 2013) (quoting WILLISTON ON CONTRACTS, § 44:52 (4th ed. 2000)); Pl.'s Reply Summ. J. Mot. at 14–17. But a reasonable jury could conclude that the detailed referral process in the 2016 contract was important

13

to the parties and, accordingly, IBP2's failure was substantial *See* 2016 Contract § 2. The deposition testimony that IBP2 cites, when viewed in the light most favorable to ORI, fails to show that ORI waived its rights to require compliance with the referral process. Pl.'s Reply Summ. J. Mot. at 4–5, 14–17.

Given this genuine dispute of material fact, IBP2 is not entitled to summary judgment on its breach-of-contract and Sales Act claims and its motion for partial summary judgment is DENIED.

## CONCLUSION AND ORDER

For the reasons above, the court GRANTS IBP2's motion to reconsider and DENIES IBP2's motion for partial summary judgment. Any grants of summary judgment in the court's previous orders based on a finding that IBP2 is not entitled to referral fees for customers (i)–(iii) and (x) under the 2018 contract are no longer in effect and the question of such entitlement is reserved for trial. The court DENIES ORI's motion to strike and modify the briefing schedule as moot.

DATED December 3, 2025

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge